758 So.2d 457 (2000)
Robert Lee FICKLIN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00105-COA.
Court of Appeals of Mississippi.
March 28, 2000.
*459 Edmund J. Phillips Jr., Newton, Robert N. Brooks, Carthage, Attorneys for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Robert Lee Ficklin was convicted by a Leake County jury of aggravated assault and sentenced as a habitual offender to life imprisonment without benefit of parole. Ficklin appeals this judgment asserting that the trial court erred in failing to order a psychiatric evaluation, that the indictment failed to notify Ficklin properly that he was being prosecuted as a habitual offender, and that the trial court should not have admitted certified computer records as self-authenticating documents. We find that these assignments have no merit and affirm.

FACTS
¶ 2. On the evening of September 26, 1998, Robert Ficklin was involved in a verbal confrontation with Sylvester Townsend. Ficklin asked to speak to his former girlfriend, Teresa Coleman, who was now dating Townsend. When Townsend refused to let Ficklin speak to Coleman, Ficklin walked across the street to his home and returned with a shotgun.
¶ 3. Ficklin shot Townsend in the arm and stomach with the shot gun. Townsend testified that he did not see Ficklin after the confrontation and before he was shot. Townsend ran away after being shot. When Ficklin's cousin attempted to take the gun away, Ficklin fired at her feet.
¶ 4. Ficklin testified that he shot Townsend because he thought that Townsend had a knife and was about to use it on Ficklin. This testimony was not corroborated. Ficklin also testified that he told Townsend after shooting him, "I'm tired of you messing with me and getting off in my business."
¶ 5. Prior to trial Ficklin's attorney filed a motion for a psychiatric evaluation. Along with the motion, the attorney filed an affidavit which indicated that Ficklin was not cooperating with him and that he seemed to be confused about the shooting incident. When meeting with his attorney, Ficklin was said to have acted irrationally and "stayed in a complete rampage." The attorney was concerned about Ficklin's competency and ability to assist in his defense.
¶ 6. On further examination, Ficklin's attorney admitted that he had represented Ficklin previously, although it was some twelve years prior, and did not from any prior contact know Ficklin to suffer mental problems. The trial court determined that there was not sufficient proof presented at that time to warrant a psychiatric evaluation. The court indicated that it would allow further testimony and evidence to be presented on the competency issue the following week. There is nothing in the record to suggest that Ficklin took advantage of this opportunity.

DISCUSSION

I. Denial of psychiatric evaluation.
¶ 7. Ficklin asserts that the trial court erred in denying his motion for a psychiatric evaluation. In essence, Ficklin is asserting that he was entitled to an evaluation because of the mere formality of the filing of the motion accompanied by his attorney's affidavit combined with his notice of intention to use an insanity defense.
¶ 8. A court rule for criminal trials provides that "if before or during trial the court ... has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination...." URCCC 9.06. Another relevant requirement is that when "the mental condition of a person indicted for a felony is in question, the court ... may order such person to submit to a mental examination ... to *460 determine his ability to make a defense...." Miss.Code Ann. § 99-13-11 (Supp.1999).
¶ 9. Both the statute and the rule require a psychiatric exam, but only if the trial judge determines that there are reasonable grounds to question the competence of the accused. If a trial judge finds "a probability that defendant is incapable of making a rational defense, the trial should not proceed until the defendant's mental condition has been investigated and it appears that he is sufficiently rational to make a defense." Emanuel v. State, 412 So.2d 1187, 1188 (Miss.1982). Once the issue of competency is raised, the trial judge is obligated to conduct a hearing in order to decide if a probability exists that the defendant is capable of making a rational defense. Id.
¶ 10. The burden is on the defendant to present evidence sufficient to persuade the trial court that a mental examination is warranted. If the trial court concludes that there is not a probability that the defendant is incapable of making a rational defense, we uphold that finding unless it was clearly against the weight of the evidence. Dunn v. State, 693 So.2d 1333, 1341 (Miss.1997). We will "assume that the trial court objectively considered the facts and circumstances, including those which are not available to this Court, which bore upon [the defendant's] competence to stand trial." Conner v. State, 632 So.2d 1239, 1251 (Miss.1993).
¶ 11. Here the initial hearing concerning Ficklin's motion occurred just one day after Ficklin's counsel was appointed. It is true that the attorney presented by affidavit evidence that Ficklin was uncooperative and even was in a "complete rampage" during the meeting. At issue was Ficklin's ability to stand trial and assist in his defense, not his mental condition at the time of the alleged offense. Defense counsel indicated concern after one consultation with his client that there might be a problem with Ficklin's competency.
¶ 12. The trial court recognized its burden. The holding was that "on the proof I have before me at this time, I am going to overrule [the] motion." Whether this aberrant behavior was itself an aberration for Ficklin, whether it was feigned or chemically induced, or whether for any other reason it might be fleeting, were all considerations that the trial court may well have had in refusing to grant the motion at that time. The court then invited Ficklin to present additional evidence in a week's time. The fact that Ficklin failed to produce further evidence or testimony of incapacity speaks to the reasonableness of the trial court's decision.
¶ 13. In one authority that Ficklin urges upon us, the supreme court found that the defendant was not given a competency hearing as required and that the trial court had applied an erroneous legal standard. Addkison v. State, 608 So.2d 304, 310 (Miss.1992). To the contrary, here Ficklin received a hearing to determine whether sufficient evidence existed to order a mental evaluation. At the hearing the trial court applied the proper legal standard. Another hearing was tentatively scheduled at which evidence beyond just the attorney's affidavit could be presented.
¶ 14. Another case that Ficklin cites provides that if an indigent defendant has made a preliminary showing that his sanity will likely be a significant factor at trial, he is entitled to a psychiatric evaluation to protect his due process rights. Ake v. Oklahoma, 470 U.S. 68, 74, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This simply begs the question of whether a preliminary showing was made. Within the breadth of discretion afforded the trial court in its ruling, we find no error.
¶ 15. Both the previously cited court rule and the statute allow for a motion for a psychiatric evaluation to be made at any point before or during the defendant's trial. This motion may be made by the court or by an attorney. The motion here was never renewed during the course of the trial. In fact, it appears that Ficklin's *461 ability to assist in his defense was never again raised. Ficklin even testified in his own defense. The burden is on the defendant to go forward with the evidence to show his probable incapacity. This Ficklin failed to do.

II. Indictment was fatally flawed.
¶ 16. Ficklin's claims that the indictment was fatally flawed because it failed expressly to inform him that the State was seeking to impose a penalty of life imprisonment without the possibility of parole. This claimed error was not first presented to the trial court.
¶ 17. The caption to the indictment stated "Aggravated Assault Habitual Offender." The second page included the details of the two prior convictions and then closed by stating "he, the said Robert Lee Ficklin, therefore being a habitual criminal pursuant to Section 99-19-83, Miss.Code Ann. (1972)." What Ficklin argues was missing was a specific statement that as a result of this information, the State would seek a life sentence without benefit of parole.
¶ 18. The statute in question provides this:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-83 (Rev.1994).
¶ 19. Inclusion of this information is to put the accused on notice of what is at stake at trial. Based on what was included in the indictment, Ficklin had notice of the potential penalty if convicted. No specific requirement of the statute was violated by failure to state the phrase "life sentence." Ficklin did not raise this at trial. Had he done so, and should the trial judge have found the omission of any significance, then amendments to include language regarding habitual offender status are specifically authorized by court rule. URCCC 7.09. This is a matter that does not affect fundamental rights, can be addressed at the trial level, and not having been raised below is waived on appeal.

III. Admission of self-authenticating documents.
¶ 20. Ficklin's final assignment of error centers on the admission of certified records obtained from computer files during the sentencing phase. Ficklin's objection to these records is by necessity a two-fold objection. The first is that the records are hearsay; the second is that they are not records that are able to be certified as self-authenticating documents.
¶ 21. The State offered certified printouts of Ficklin's inmate files from the Mississippi Department of Corrections to show that he was a habitual offender. The print-outs showed that Ficklin had served two separate prison terms in excess of one year. The objection by defense counsel was that these were not self-authenticating documents under the relevant evidence rules.
¶ 22. First, we agree that the offered computer print-outs are hearsay evidence. They are written assertions offered into evidence to prove the truth of the matter asserted. M.R.E. 801. We next examine potentially relevant hearsay exceptions. One exception is this:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth, (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report....
*462 M.R.E. 803(8). While this is an issue of first impression in this State, the issue has been addressed elsewhere. Simply put, the admission of computer generated documents is allowed. E.g., United States v. Young Brothers, Inc., 728 F.2d 682, 693-94 (5th Cir.1984) (holding computer data compilations kept in the regular course of the State's business are admissible when the requirements for laying a proper foundation have been met); Hughes v. United States, 953 F.2d 531, 540 (9th Cir.1992) (holding official IRS documents, even if generated by computer, are admissible as public records); United States v. Ryan, 969 F.2d 238, 240 (7th Cir.1992) (holding United States Treasury Department's certified computer records were admissible as self-authenticating public documents).
¶ 23. We find that a reasonable definition of the term in Rule 803(8) of "data compilation" includes computer generated data or computer print-outs. The Mississippi Rules of Evidence are modeled on the Federal Rules. The federal Advisory Committee's Note to a different rule, which is the one that first used the term "data compilation," provided as follows:
The expression "data compilation" is used as broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form. It includes, but is no means limited to, electronic computer storage.
Fed.R.Evid. 803(6) (Advisory Committee's Note). This same premise was incorporated into the comment to Rule 803(6) of the Mississippi Rules, which states that "the phrase `data compilation' includes, but is not limited to, electronic information storage systems." M.R.E. 803(6) cmt. We hold that the computer generated records of Ficklin's prior incarceration fall within the public records exception to the hearsay rule, and are admissible as data compilations under Rule 803(8).
¶ 24. Next, we consider Ficklin's objection that the records were improperly found to be self-authenticating documents. By that, it is meant that no records custodian must appear to testify about the documents. The Rules establish a process for admission of certified records:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:... (4) A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification,....
M.R.E. 902(4). Since the computer print-outs are classified as data compilations, they were admissible after being certified as correct over the signature of the custodian of the records.
¶ 25. On appeal, Ficklin also asserts that the State failed to give required notice of the records prior to the sentencing hearing. Certified records within the scope of Rule 803(6) concerning "regularly conducted activities" may be admitted into evidence only after the proponent gives notice to the other party of the intent to offer them as self-authenticating. M.R.E. 902(11)(C). Failure to give this notice results in the records not being self-authenticating and requires the proponent to call the custodian as a witness. Id. This rule it inapplicable here. The computer printouts are admitted under Rule 803(8) dealing with public records, to which this procedure is inapplicable.
¶ 26. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS AN HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
*463 McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.