907 So.2d 985 (2005)
DeWayne FRAZIER a/k/a Dennis Green a/k/a Walter Dennis Green, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02268-COA.
Court of Appeals of Mississippi.
March 1, 2005.
Rehearing Denied July 26, 2005.
*988 Ralph Stewart Guernsey, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BRIDGES, P.J., for the Court.
¶ 1. A jury sitting before the Calhoun County Circuit Court found Dewayne Frazier guilty of grand larceny. The circuit court determined that Frazier was a habitual offender pursuant to Section 99-19-81 of the Mississippi Code and sentenced Frazier to five years in the custody of the Mississippi Department of Corrections. Additionally, the circuit court held that Frazier had no possibility of probation or parole. Aggrieved, Frazier appeals the circuit court's finding of habitual status. He does not comment on the underlying conviction. Instead, he asks this Court to resolve the following issues, listed verbatim:
I. WHETHER FRAZIER WAS CONVICTED OF HABITUAL CRIMINAL ENHANCEMENT PURSUANT TO § 99-19-81 WITHOUT A SUFFICIENCY OF PROOF BEYOND A REASONABLE DOUBT AND WITHOUT A BONA FIDE TRIAL AS TO ENHANCEMENT AS A RECIDIVIST.
II. WHETHER THE TRIAL COURT ERRED, UNDER THE IDIOSYNCRATIC FACTS OF THIS CASE, BY ALLOWING THE STATE TO AMEND ITS INDICTMENT AT THE END OF TRIAL TO INCLUDE A CHARGE OF HABITUAL CRIMINAL ENHANCEMENT PURSUANT TO § 99-19-81.
III. WHETHER THE TRIAL COURT ERRED BY PERMITTING AN AMENDMENT TO THE INDICTMENT OF FRAZIER WHICH PREJUDICED AND BELIED ONE OF FRAZIER'S DEFENSES.
IV. WHETHER THE TRIAL COURT ERRED, UNDER THE TOTALITY OF THE CIRCUMSTANCES AND PROCEEDINGS CONTEMPORANEOUSLY EXISTING, BY DENYING DUE PROCESS TO FRAZIER AS TO HIS CONVICTION UNDER § 99-19-81.
¶ 2. Additionally, Frazier claims that the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) makes *989 self-authenticating pen-packs, otherwise appropriate under Mississippi Rule of Evidence 902(4), invalid under the Federal Constitution's Sixth Amendment Confrontation Clause. Finding no error, we affirm the decision of the circuit court.

FACTS
¶ 3. Dewayne Frazier was arrested and indicted on a charge of grand larceny related to the theft of two riding mowers from a John Deere dealership in Calhoun County. Jewlene Jones, Frazier's girlfriend at the time, and Tavarise Stephens were also arrested and charged as accomplices. Stephens negotiated a plea and ultimately testified against Frazier. On January 14, 2003, the State filed a motion to amend the indictment to charge Frazier with habitual offender status based on prior Alabama convictions under the aliases DeWayne Frazier or Dennis Green. For whatever reason, the circuit court did not enter an order allowing or denying that motion prior to trial.
¶ 4. Trial took place on August 12-13, 2003. During discussions on jury instructions, the State pointed out that the circuit court had not entered an order regarding the State's motion to amend to reflect the charge of habitual status. Although Frazier's counsel made a general objection "for the record," the circuit court allowed the amendment of the indictment.

ANALYSIS

I. WHETHER FRAZIER WAS CONVICTED OF HABITUAL CRIMINAL ENHANCEMENT PURSUANT TO § 99-19-81 WITHOUT A SUFFICIENCY OF PROOF BEYOND A REASONABLE DOUBT AND WITHOUT A BONA FIDE TRIAL AS TO ENHANCEMENT AS A RECIDIVIST.
¶ 5. On appeal, Frazier attacks the sufficiency of the proof that the State utilized to demonstrate Frazier's habitual offender status. At trial, the State presented "pen-packs" from Alabama.[1] Those pen-packs indicated that Frazier had three prior felony convictions in Alabama. When the State submitted the pen-packs, Frazier objected and argued that the last two pages in the pen-packs were irrelevant because those pages contained pictures of someone else. The State responded that those pictures related to Illinois convictions and were only part of the overall submission because they were part of Alabama's records. The State pointed out that they were not relying on any Illinois convictions to prove habitual status. Rather, the State only submitted the Alabama convictions as proof of habitual offender status. After the State's response, Frazier objected to the verification and authentication of the pen-packs and argued that they were inadmissible because no one from the State of Alabama was present to authenticate them. The State responded that the pen-packs were certificated and bore the Alabama State Seal and qualified as self-authenticating documents according to MRE 902(4). Following that exchange, the circuit court allowed the pen-packs into evidence.
¶ 6. A review of Frazier's assertion indicates that he makes two arguments under this singular heading. First, Frazier attacks the sufficiency of proof of habitual status. Second, Frazier claims that the procedure by which he was determined to be a habitual offender was also insufficient. We will begin this analysis by addressing *990 Frazier's lamentation regarding the sufficiency of proof.
¶ 7. Frazier argues multiple points under his argument that the proof of habitual status was insufficient. Frazier argues that no document in the Alabama pen pack proves Frazier served a term of more than one year in prison. Further, that the State did not build a sufficient record, that the proof was technically insufficient, and that the proof was not presented by the best evidence. The State argues that the proof was sufficient and the procedures involved followed established precedent. We address these arguments in turn.
¶ 8. Before we delve into this myriad of arguments, we are mindful of our standard of review under the circumstances. As long as the trial judge applied the correct legal standards, this Court will not reverse a trial judge's decision unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence. Chandler v. State, 789 So.2d 109 (¶ 8) (Miss.Ct. App.2001). That being stated, we examine Frazier's claims.
¶ 9. First, Frazier argues that the proof of habitual offender status was insufficient because no document in the Alabama pen-pack proves that he served a term in prison in excess of one year. This argument follows Frazier's claim that the indictment charging habitual status was confusing because it was unclear whether the State proceeded under Section 99-19-81 of the Mississippi Code or Section 99-19-83 of the Mississippi Code when the State sought habitual enhancement of Frazier's grand larceny charge.
¶ 10. Frazier's claim of confusion stems from language in the order that permitted amendment of the indictment to reflect the charge of recidivism. While the motion to amend the indictment plainly announced that the State would proceed under Section 99-19-81 and requested a five year sentence, the actual order that allowed amendment of the indictment contained an inconsistency. The first paragraph of the order stated that Frazier was charged as a habitual offender pursuant to Section 99-19-81 and faced a five year sentence, but the last page of that order stated that Frazier faced a possible life sentence under Section 99-19-81. According to Frazier, this was so confusing that he could not tell if the State was pursuing habitual status under Section 99-19-81, which fixes a maximum sentence or Section 99-19-83, which permits a sentence of life imprisonment.
¶ 11. Section 99-19-81 states that one convicted of a felony must be sentenced to the maximum sentence for that felony if that convict has a previous record of conviction of two other felonies, arising from separate incidents. Miss.Code Ann. § 99-19-81 (Rev.2000). Additionally, said statute requires that the convict must have been sentenced to separate terms of at least one year for each of his two prior felonies. Id. However, Section 99-19-83 provides that any person convicted of a felony that has two previous felony convictions, one of those being a conviction of a violent crime, that person will be sentenced to life imprisonment without the possibility of parole or probation. Miss. Code Ann. § 99-19-83 (Rev.2000) (emphasis added).
¶ 12. This issue has been examined before. The Mississippi Supreme Court determined that "[i]t [is] not necessary for the State to specify in the indictment which section of the habitual criminal statute they were proceeding under." Ellis v. State, 469 So.2d 1256, 1258 (Miss.1985) (citing Osborne v. State, 404 So.2d 545, 548 (Miss.1981)) (holding these two statutes are not criminal offenses and only affect sentencing).
*991 ¶ 13. Assuming, for the sake of the argument, that the State was required to provide notice of the section of the habitual criminal statute they proceeded under, this Court is not inclined to determine that Frazier experienced any prejudice from the inconsistency in the indictment. While true that Section 99-19-81 does not allow for a life sentence in Frazier's situation, it is clear that the inconsistency in the indictment was not so misleading that Frazier could experience any prejudice.
¶ 14. The State provided adequate notice under which statute they sought to proceed. The motion to amend the indictment did not contain an inconsistency. Moreover, both the motion to amend the indictment and the order allowing amendment list Section 99-19-81 as the basis of habitual enhancement and the exact crimes that the State alleged as the substance of habitual enhancement. The first crime was a prior conviction for receiving stolen property, for which Frazier, under his alias of Dennis Green, was sentenced to ten years imprisonment. The second set of crimes were two more stolen property convictions as well. Those convictions arose separately from Frazier's first stolen property conviction. Frazier received five year and one year sentences, respectively, for the second set of convictions. The third crime was an escape conviction. Frazier was sentenced to a two year sentence for escaping from prison. None of these prior crimes are considered overtly violent crimes. Combined with the lack a violent prior felony and no request of proceeding under Section 99-19-83, Frazier had reasonable notice that the State sought habitual criminal enhancement under Section 99-19-81.
¶ 15. Frazier also mentions that no document proved that he served a prison term in excess of one year. It is unnecessary to demonstrate that Frazier served terms in prison in excess of one year. Clearly, under Section 99-19-81 of the Mississippi Code, proof of habitual status is sufficient where the State demonstrates that a defendant was sentenced to terms in excess of one year. Miss.Code Ann. § 99-19-81 (Rev.2000). The pen-packs show that Frazier was sentenced to terms of ten years, five years, one year, and two years. As such, the evidence was sufficient to demonstrate habitual status under Section 99-19-81 of the Mississippi Code. Accordingly, Frazier's first series of claims is misplaced.
¶ 16. Frazier's next argument under this singular heading is that the State did not build a record containing the relevant facts necessary to identify the prior convictions that the State relied upon. Obviously, prior convictions may be proven by introducing original commitment papers concerning prior convictions. Sims v. State, 775 So.2d 1291 (¶ 14) (Miss.Ct.App. 2000) (citations omitted). The Mississippi Supreme Court has commented that "the best evidence [of habitual status] is the judgment of conviction, but that other evidence suffices as well." Id. The most common method of demonstrating prior convictions for enhancement purposes is by introducing original or certified copies of commitment papers. Id. Finally, "[c]ertified copies of `pen packs' suffice as competent evidence of prior convictions." Dixon v. State, 812 So.2d 225 (¶ 27) (Miss.Ct.App. 2001).
¶ 17. The State introduced certified copies of Alabama pen-packs to prove that Frazier had three prior convictions under the alias Dennis Green. At a bond hearing, Frazier was questioned about his use of aliases. Frazier responded that he had family with the surname Green but that he never used that name. Ironically, Frazier and Green have the same birthday. Still, the overwhelming indicator *992 that demonstrated that Frazier and Dennis Green were the same person was testimony from one of Frazier's own witnesses his girlfriend. Jewlene Jones, offering testimony in Frazier's favor, inadvertently testified that she knew Frazier as Dennis Green and had always known him as Dennis Green. Jones even mentioned that she sometimes called herself Mrs. Dennis Green or Jewlene Green.
¶ 18. During the sentencing hearing, the State introduced certified copies of Alabama pen-packs. Though Frazier claims that the State did not build a sufficient record, the record was entirely sufficient to allow this Court to determine the basis for habitual enhancement. The pen-packs, admitted into evidence and contained in the appellate record, contain conviction reports that demonstrate the crimes for which Frazier was convicted and the sentences he received. Accordingly, this Court can not find that the trial court's decision was manifestly in error or contrary to the overwhelming weight of the evidence. As such, this issue is without merit.
¶ 19. Next, Frazier argues that the proof of habitual status was technically insufficient. Frazier claims that the circuit court denied him the mandatory "two-phase trial" required in habitual offender proceedings. Frazier's theory follows the concept that simply entering documents into evidence is insufficient to demonstrate prior convictions.
¶ 20. A "bifurcated trial" is necessary in prosecutions under § 99-19-81. Seely v. State, 451 So.2d 213, 215 (Miss. 1984); UCCR 11.03(2). That the trial is bifurcated, means a jury resolves the underlying charge and, should a judgment of guilt result, the circuit judge determines whether the convicted satisfies the requirements for enhanced sentencing as a habitual offender. Seely, 451 So.2d at 215. In such a proceeding, the State must prove, beyond a reasonable doubt, that the convicted is a habitual offender. Ellis v. State, 485 So.2d 1062, 1063 (Miss.1986).
¶ 21. Frazier's theory of an insufficient second trial portion relies heavily on this Court's decision in Vince v. State, 844 So.2d 510 (Miss.Ct.App.2003). In Vince, this Court reversed a circuit court's finding of habitual criminal status. To prove habitual status, the prosecutor in Vince attempted to prove the defendant's habitual status by offering printouts of NCIC reports. However, the Vince Court observed that the reports were not made part of the record, nor were they listed as an exhibit. The Vince Court ultimately vacated the sentence under habitual status due to the State's failure to carry the burden of proof.
¶ 22. Frazier claims that this case should be reversed for the same reasoning. Frazier admits that the State avoided one Vince error when the State made sure the Alabama pen-pack records were admitted into evidence. A further distinction, in Vince the State relied on NCIC reports. Here, the State utilized certified copies of Alabama pen packs. While Vince reversed due to an insufficient record, the Vince Court also discussed the sufficiency of NCIC reports:
We note that during the course of the sentencing hearing the prosecuting attorney offered the observation that the State relied on the NCIC printout "pursuant to [Ficklin v. State, 758 So.2d 457 (Miss.Ct. App.2000)], stating that computer printouts of the NCIC report were admissible and legally sufficient to amend the indictment.
This statement is incorrect. This Court's decision in [Ficklin] did not involve the question of the admissibility or the evidentiary worth of raw NCIC *993 printouts. Rather, that case dealt with computer-generated records of the Mississippi Department of Corrections regarding Ficklin's prior history of incarceration in this State, which records were found to be exceptions to the hearsay exclusionary rule as being data compilations of records maintained in the ordinary course of a public agency's business. Ficklin, 758 So.2d at 462. The records were further found to be self-authenticating because they were certified in writing as being correct under the signature of the custodian of those records. Id. These records are markedly different from NCIC records, which purport to be a compilation of information gathered from various jurisdictions throughout the country, the accuracy of which cannot necessarily be certified by the NCIC compiler. By way of example, though the NCIC custodian may properly certify that the NCIC report is an accurate transcription of criminal records supplied by the State of Idaho, that custodian is not in a position to assess the accuracy of the underlying information provided by the records custodian.
Vince v. State, 844 So.2d at (¶¶ 23-24).
¶ 23. Thus, Frazier's reliance on Vince fails because NCIC reports are distinguished from certified copies of pen-packs. The insufficient record was the reversible factor in Vince, not the Court's tendency to routinely accept proof of habitual status, as Frazier asserts. As Frazier admits, the State introduced the certified pen-packs into evidence, rather than simply producing NCIC reports. Accordingly, this argument is simply without merit.
¶ 24. In his final argument under this single heading, Frazier argues that the State should not have introduced summaries of official court records. Instead, Frazier suggests that the State should have presented what he claims is the best evidence, the records themselves. Frazier states that the pen-pack had none of the items suggested or approved to prove habitual status.
¶ 25. Prior convictions may be proven with introduction of the original commitment papers concerning the prior convictions. Hopson v. State, 625 So.2d 395, 399 (Miss.1993). Introduction of the original or certified copies of the commitment papers is the common means by which prior convictions for enhancement purposes are proved. Sims v. State, 775 So.2d 1291 (¶ 14) (Miss.Ct.App.2000) (citing Smith v. State, 729 So.2d 1191, 1222 (Miss. 1998)). While the best evidence of recidivism is the judgment of conviction, other evidence suffices as well. Id. Accordingly, there is no "one proper method" for demonstrating habitual status. As we mentioned before, "[c]ertified copies of commitment papers may be used as a substitute for the original judgment in order to prove prior convictions." Dixon, 812 So.2d at (¶ 26). That is exactly what the State utilized in this instance. It follows that this claim is meritless.

II. WHETHER THE TRIAL COURT ERRED, UNDER THE IDIOSYNCRATIC FACTS OF THIS CASE, BY ALLOWING THE STATE TO AMEND ITS INDICTMENT AT THE END OF TRIAL TO INCLUDE A CHARGE OF HABITUAL CRIMINAL ENHANCEMENT PURSUANT TO § 99-19-81.
¶ 26. Frazier cites Hentz v. State, 542 So.2d 914, 918 (Miss.1989) for the proposition that an indictment against a habitual offender must include a charge of habitual status sufficient to satisfy notice and due process requirements and double jeopardy concerns. As Frazier makes similar *994 claims in issue four, below, we address that issue there for the sake of brevity.
¶ 27. Here, Frazier also claims that he was entitled to any and all discovery that the State possessed regarding habitual status and that all documentary evidence and any witness's names should have been disclosed prior to trial. While admitting that defense counsel did not raise a discovery breach, Frazier argues that the State's violations were "egregious." Frazier claims that his attorney only had a dim knowledge of Frazier's prior record.
¶ 28. Our review of the record indicates, and Frazier admits, that Frazier did not offer an objection based on discovery violations. As such, Frazier is procedurally barred from asserting error on appeal that he did not preserve in the trial court. The contemporaneous objection rule applies and that this point cannot be raised for the first time on appeal. Cummings v. State, 465 So.2d 993, 995 (Miss. 1985).

III. WHETHER THE TRIAL COURT ERRED BY PERMITTING AN AMENDMENT TO THE INDICTMENT OF FRAZIER WHICH PREJUDICED AND BELIED ONE OF FRAZIER'S DEFENSES.
¶ 29. In this issue, Frazier complains that allowing amendment of the indictment prejudiced one of Frazier's defenses-mistaken identity. Similar to the situation discussed directly above, this argument stems from Frazier's counsel's examination of Jewlene Jones, Frazier's girlfriend who testified for Frazier. Jones testified that she knew Frazier as Dennis Green.
¶ 30. Frazier claims that the circuit court, by permitting amendment of the indictment to reflect a charge of habitual status, put Frazier in a position where he would have to repudiate the testimony of one of his own witnesses  something he could not do. Frazier concludes that he was deprived of his theory of mistaken identity. Thus, we consider whether Frazier's defense experienced prejudice when the trial court amended the indictment to reflect the charge of habitual criminal enhancement.
¶ 31. Whether an accused is prejudiced by the amendment of an indictment depends on whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment and whether or not any evidence the accused might have would be equally applicable to the indictment or information in the one form as in the other. Adams v. State, 772 So.2d 1010 (¶ 52) (Miss.2000) (citations omitted). If the defense would be equally applicable to both indictments, then the amendment is a change in form, rather than a substantial change and the amendment is permissible. Id. Regardless, amending indictments to include a habitual offender charge does not affect the substance of the crime charged, only the sentencing of the crime. Cox v. State, 793 So.2d 591 (¶ 20) (Miss.2001). Because amending an indictment to charge habitual offender status does not affect the crimes charged, there is no need to prepare a defense for trial. Adams, 772 So.2d at (¶ 52).
¶ 32. Frazier did not assert mistaken identity as a defense to the charge of grand larceny. Rather, that was Frazier's assertion in regard to the State's claim that he was also Dennis Green. Thus, the amendment did not make mistaken identity an invalid defense to the grand larceny charge because Frazier did not assert mistaken identity as a defense to the grand larceny charge. If anything, amendment of the indictment meant that Frazier would have to assert mistaken identity as a *995 defense to the prior convictions under his alias. Because amendment of the indictment to include a habitual offender charge did not affect the substance of the underlying criminal charge, this assignment of error is meritless.

IV. WHETHER THE TRIAL COURT ERRED, UNDER THE TOTALITY OF THE CIRCUMSTANCES AND PROCEEDINGS CONTEMPORANEOUSLY EXISTING, BY DENYING DUE PROCESS TO FRAZIER AS TO HIS CONVICTION UNDER § 99-19-81.
¶ 33. Frazier complains that when the court allowed amendment of the indictment, the circuit court violated his due process rights. More specifically, Frazier claims that he was deprived of reasonable advance notice of the habitual offender charge as well as a meaningful opportunity to be heard. However, an indictment may be amended to include the charge of habitual offender only if the offender is given "a fair opportunity to present a defense and is not unfairly surprised." Smith v. State, 835 So.2d 927 (¶ 63) (Miss.2002) (citing Adams, 772 So.2d at 1020; URCCC 7.09).
¶ 34. We cannot determine how Frazier was unduly surprised by amendment of the indictment. The record shows that the State did not file its motion to amend the indictment on the eve of trial. Frazier requested and received a continuance after the State filed their motion to amend. The State's motion to amend was one of the reasons for Frazier's request for continuance. Surely, there can be no surprise when Frazier contemplated the motion to amend in his request for more time. Moreover, the State filed its motion on January 14, 2003  seven months prior to trial. The State requested a ruling on its motion at trial because that motion had not been adjudicated. Frazier had at least seven months to prepare for the consequences of the State's motion to amend the indictment. There is no merit to this issue.
¶ 35. Additionally, we cannot determine how Frazier was denied a meaningful opportunity to be heard. Frazier did not make any similar objection during the habitual enhancement portion of his trial. Frazier only objected to certain photographs related to unasserted Illinois convictions and the authentication of the pen-packs. We cannot determine what Frazier wanted to declare or how the trial court denied him the opportunity to declare it. While Frazier claims that he was denied the opportunity to rehabilitate his mistaken identity defense, that defense was to the habitual enhancement of his sentence, not the underlying charge of grand larceny. During the sentencing hearing, the trial court asked whether Frazier had anything else to add, Frazier said "no." If Frazier left something unsaid, it was not for lack of an opportunity. This assignment of error lacks merit.

V. DOES THE RECENT SUPREME COURT DECISION OF CRAWFORD V. WASHINGTON, 124 S.Ct. 1354 (2004) INVALIDATE RULE 902 OF THE MISSISSIPPI RULES OF EVIDENCE, THEREBY INVALIDATING THE EVIDENCE THAT LED TO FRAZIER'S ENHANCED SENTENCE AS A HABITUAL OFFENDER?
¶ 36. Frazier's counsel argues that the recent Supreme Court decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) calls into question the Constitutional validity of the self-authenticating pen-packs. Crawford held that the Confrontation Clause of the Federal Constitution's Sixth Amendment *996 bars the admissibility of out-of-court testimonial statements by an unavailable witness offered in a criminal trial to prove the truth of a matter asserted (also known as hearsay) unless the defendant has had a prior opportunity to cross-examine the witness about the statement. As Crawford applies to the Sixth Amendment of the United States Constitution, it also applies to the confrontation clause contained in Section 26 of our Mississippi Constitution. Frazier's counsel opines that Crawford makes the self-authenticating pen-packs inadmissible as a violation of the confrontation clause. Such a finding would invalidate Rule 902(4) of the Mississippi Rules of Evidence. Rule 902(4) states "[a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification" is admissible as an exception to the hearsay rule. M.R.E. 902(4); Smith v. State, 835 So.2d at (¶ 67). If this Court decides according to Frazier's request, that decision would invalidate more than MRE 902. Rule 44 of the Mississippi Rules of Civil Procedure authorizes the use of a copy of an official record in the place of the original as long as the copy is "attested by a person purporting to be the officer having the legal custody of the record, or his deputy...." M.R.C.P. 44. Be that as it may, we are unaware of any direct precedent on this issue, though the language of Crawford will suffice and direct our result.
¶ 37. In Crawford, the defendant was charged with assault and attempted murder after he stabbed a man who allegedly tried to rape his wife. The prosecutor for the State of Washington sought to use portions of the wife's statements to police to challenge the defendant's claim that the stabbing was in self-defense. The defendant's wife invoked Washington's marital privilege and did not testify against the defendant. The trial court determined that the wife was unavailable and admitted her statements after finding them to be trustworthy under Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
¶ 38. The Supreme Court reversed and held that admission of the wife's statements violated the defendant's right to confront witnesses against him. The Supreme Court explained that because the marital privilege denied the defendant the opportunity to cross-examine his wife, the admission of the wife's tape-recorded statement violated the confrontation clause, which provides the accused with the right "to be confronted with the witnesses against him." The Court went on to say that where testimonial hearsay evidence is at issue, the Sixth Amendment's Confrontation Clause demands unavailability and a prior opportunity for cross-examination prior to admissibility of that testimonial hearsay evidence. Crawford, 124 S.Ct. at 1368. In so holding, the Supreme Court nullified the previous framework for judging the reliability of the statements of unavailable witnesses that it established in Ohio v. Roberts.
¶ 39. Justice Scalia, writing for the majority, opined that the history of the Confrontation Clause supported two principles: that the Confrontation Clause was focused primarily on testimonial hearsay and, second, that the Constitutional Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant had a prior opportunity to cross-examine that witness. Crawford, 124 S.Ct. at 1365. As a result, Crawford distinguishes testimonial hearsay from non-testimonial *997 hearsay. Put another way, testimonial hearsay must be exposed to confrontation by way of cross-examination prior to reaching admissible status, while non-testimonial hearsay does not trigger the need for confrontation to be admissible. Thus, our application of Crawford to the present facts depends upon a determination of whether the evidence admitted is "testimonial."
¶ 40. However, the Supreme Court did not offer a comprehensive definition of "testimonial." The Court did describe such evidence as applicable "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id at 1374. Although the Crawford court expressly refrained from attempting a comprehensive definition of "testimonial," it did provide the following analysis:
"[N]ot all hearsay implicates the Sixth Amendment's core concerns.... The text of the Confrontation Clause ... applies to `witnesses' against the accused in other words, those who `bear testimony.' `Testimony,' in turn, is typically `[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.
Various formulations of this core class of `testimonial' statements exist: `ex parte in-court testimony or its functional equivalent that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' `extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,'; `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"
Id at 1364.
¶ 41. Accordingly, courts must now decide what out-of-court statements by an unavailable witness, within and beyond the core class of designated "testimonial" statements, should be barred from admissibility at trial as violative of the Confrontation Clause. As mentioned, there is no direct precedent to guide us in determining whether pen packs are testimonial. In Burchfield v. State, 892 So.2d 191 (Miss. 2004) the Mississippi Supreme Court determined that the author of a label on non-prescription, over the counter medication was not a "witness against the accused." Burchfield at (¶ 43). Further, that such labels are hearsay, but are non-testimonial and exempt from Confrontation Clause challenges. Id. at (¶¶ 43-44).
¶ 42. The record reflects that the statements at issue here  the pen packs  are not in the "core class" of testimonial statements suggested in Crawford, such as affidavits, depositions, prior testimony, confessions, or statements that would lead an objective person to reasonably believe that the statements would be available for use in a later trial. Crawford, 124 S.Ct. at 1364. As in Burchfield, the "author" of the pen-packs  the custodian of records for the Alabama Department of Corrections  was not a witness against Frazier. No one from the State of Alabama testified that Frazier was a habitual offender. If anything, the certificate on the pen packs indicates that the custodian of records swore that the documents were true and correct copies, not that Frazier actually committed any act.
¶ 43. Accordingly, the "matter asserted" was that the pen packs were accurate copies of official records. The matter asserted is not that "Frazier is, in fact, a habitual offender." Were that the case, *998 the documents would be attempting to prove "the truth of the matter asserted." It follows that Frazier did not need to confront any one witness against him, because the only "witness testimony" if it could even be called such, was that the records were true copies of Alabama's records of Frazier's convictions. All Frazier could have asked was whether the copies were true copies, because that is all the custodian of records asserted. If we agree with Frazier, all that would change is that the custodian of records for the Alabama Department of Corrections would have to travel to each habitual offender hearing and authenticate records as true and correct copies. The custodian of records would offer no more information than what is contained on the first page of the certified copies of the pen-packs. Such a decision would be detrimental to the judicial process and the resolution of criminal matters as it applies to those charged as well as the victims of the underlying offenses. However, the decision in Crawford does not apply to self-authenticating documents under Rule 902(4) of the Mississippi Rules of Evidence. As such, this assignment lacks merit.
¶ 44. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] "Pen packs are the records maintained on inmates sentenced to the custody of the Department of Corrections." Jasper v. State, 858 So.2d 149 (¶ 11) (Miss.Ct.App. 2003).