# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00165-COA

### Consolidated with:
### 2008-KA-00099-SCT

RONALD HOOD A/K/A RONALD J. HOOD            APPELLANT

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2017 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS-BLACKMON |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RONALD HOOD (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 02/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD, McCARTY AND C. WILSON, JJ.

### McDONALD, J., FOR THE COURT:

¶1. Ronald Hood was convicted of the crime of exploitation of children under Mississippi Code Annotated sections 97-5-31 and 97-5-33(5) (Rev. 2006) and sentenced by the trial court as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections without eligibility for parole. Feeling aggrieved, Hood appealed his conviction and sentence.

¶2. The Mississippi Supreme Court affirmed Hood's conviction and sentence on July 31, 2009, and later denied his motion for rehearing. Thereafter, Hood filed several motions for

post-conviction relief (PCR). On April 20, 2016, the supreme court granted Hood permission to proceed in the trial court to pursue his due process claim based upon the lack of a competency hearing. Hood filed his PCR motion in the trial court, which denied the motion. On appeal, Hood argues that the trial court erred when it denied his motion because his due process rights were violated by the trial court's failure to hold a competency hearing prior to trial in 2007. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On July 10, 2006, Hood was indicted by a Yazoo County grand jury for the crime of exploitation of children under Mississippi Code Annotated sections 97-5-31 and 97-5-33(5).[1] The indictment was later amended to include that Hood was a habitual offender.

¶4. Prior to trial, Hood's counsel filed a motion for a mental examination. In the motion, Hood's counsel argued that "there is reason to question whether Ronald Hood will be able to assist in his defense at trial of this matter, that he does not have the present ability to consult with his lawyer with a reasonable degree of rational understanding to adequately assist with his defense." The trial court granted Hood's motion for a mental examination and ruled that "the Defendant shall undergo a mental examination to determine the fitness to stand trial."

¶5. The examination was performed by Dr. Christopher Lott on October 4, 2007, and filed with the trial court on October 18, 2007. In the report, Dr. Lott opined that

---

[1] The indictment alleged that Hood "did unlawfully, willfully, knowingly, and feloniously possess a video of naked . . . male children under the age of eighteen (18) engaging in sexually explicit conduct. . . ."

2

Mr. Hood has the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding, and he has a factual and rational understanding of the nature and object of the charges against him. Mr. Hood's intellectual level appeared to be in the low average range, and his reading level falls in the low borderline range, so any complex legal material should be explained to him in simple and concrete terms.

Mr. Hood does not appear to need further testing or psychiatric treatment at this time. . . .

¶6. On December 11, 2007, the jury found Hood guilty, and the trial court sentenced him as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections without eligibility for parole.

¶7. Hood filed a direct appeal on January 10, 2008, *Hood v. State*, 17 So. 3d 548 (Miss. 2009), and the supreme court summarized the facts as follows:

On March 13, 2006, Melissa Hood, the defendant's wife, found a videotape with no title or other identifying information located in a box of her husband's belongings within an extra bedroom at their home. She decided to view the tape on her VCR to determine its contents. Melissa testified that when she witnessed the videotape she became sick to her stomach. The videotape depicted nude male children, and Melissa believed the children to be between the ages of five and seven years old. She showed the tape to her sister, who attempted to rip it up and threw it in the garbage. Melissa's sister also confronted the defendant, Ronald Hood, about the contents of the tape. According to Melissa, Hood's response to why he had the tape was, "I've got it because I started the stuff." He also made the statement that, "if he had to, he would go back to California where it was legal so he could do it again." Melissa and her sister directed Hood to leave the home.

Melissa further testified that, prior to their marriage, Hood admitted to possessing th[ese] type[s] of videotapes and showed her a videotape of naked male children's exposed genitals. Melissa was shocked and told Hood, "if you're going to marry me, if you're going to live in my house, you've got to get rid of this stuff. I can't take this." He stated that he would get rid of it and would not bring it into her house.

After again discovering similar material subsequent to her marriage to Hood,

3

Melissa contacted Detective Larry Davis. Davis received the tape from Melissa, and he testified that it contained images of "young boys in their nudity, running around." According to Davis, the boys appeared to be between the ages of ten and sixteen years old. Davis obtained a search warrant for a storage unit belonging to Hood. In the storage unit, law enforcement authorities discovered two small camcorder tapes and approximately one hundred VCR tapes.

*Id.* at 550-51 (¶¶2-4) (footnotes omitted).

¶8.     Hood filed an application for leave to file a PCR motion in the trial-level court, arguing that the trial court failed to conduct a competency hearing in violation of his due process rights.[2] On April 20, 2016, the supreme court granted Hood permission to proceed. In February 2017, Hood filed his PCR motion. On April 26, 2017, the trial court entered its order denying Hood's PCR motion. The order stated that Hood was found to be competent to stand trial. Additionally, the court stated that it "received no information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted it to the possibility that the defendant could neither understand the proceedings, nor rationally aid his attorney in his defense." Hood sent a letter to the supreme court dated May 17, 2017, and enclosed his notice of appeal. The notice of appeal was filed on June 30, 2017.

## STANDARD OF REVIEW

_____

[2] On July 22, 2010, the supreme court denied Hood's first PCR application in case number 2010-M-00283. The supreme court denied Hood's second PCR application on October 26, 2010. The current record also provides that Hood filed a petition for habeas corpus relief in the United States District Court for the Southern District of Mississippi, Western Division, with similar arguments. The district court's order is referenced, but it was not made a part of the record. The district court denied all of Hood's claims except the claim regarding whether Hood was entitled to a competency hearing and whether his counsel was ineffective. Regardless, this is not dispositive of the outcome of this opinion.

¶9. "This Court reviews a circuit court's denial or dismissal of a PCR motion for an abuse of discretion." *Magee v. State*, 270 So. 3d 225, 227 (¶6) (Miss. Ct. App. 2018). We "will not disturb the trial court's factual findings unless they are clearly erroneous." *Id*. at 227-28 (¶6). "Questions of law, however, are reviewed de novo." *Id.*

## DISCUSSION

¶10. Hood alleges that his due process rights were violated because since his conviction and sentence, the supreme court has mandated in *Sanders v. State*, 9 So. 3d 1132, 1136 (¶16) (Miss. 2009), that when a court orders a psychiatric evaluation, it is an error for it to not hold a competency hearing.

¶11. In *Sanders*, prior to trial, the appellant filed a motion for a psychiatric evaluation pursuant to Rule 9.06 of the Uniform Rules of Circuit and County Court Practice.[3] *Id*. at 1134 (¶7). The court granted that motion, and a doctor filed the psychiatric evaluation report with the court. *Id*. at (¶8). Thereafter, a trial was held, and Sanders was convicted of murder. *Id.* at 1135 (¶9). On appeal, Sanders argued that "the trial court erred in failing to conduct a competency hearing." *Id.* at (¶11). The supreme court noted:

> Rule 9.06 requires an on-the-record hearing to determine competency once the court has reasonable ground to believe that the defendant is incompetent. The rule clearly uses the directive "shall" and not the permissive "may" language. The rule requires that the trial court first, "shall conduct a hearing to determine if the defendant is competent" and, second, "shall make the finding a matter of record." URCCC 9.06. In the face of this plain language, it is evident that

---

[3] We note that the Uniform Rules of Circuit and County Court Practice relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. But because the former rules were still in effect at the time of the trial court's decision, Rule 9.06 is applicable in Hood's case.

5

it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.

*Id.* at 1136 (¶16) (emphasis omitted). In *Sanders*, the docket indicated that Dr. Webb had filed a report with the court. *Id*. at 1139 (¶25). It was not entered into evidence, nor was it a part of the record on appeal. *Id*. The record did not reflect that the circuit court conducted an on-the-record competency hearing, and the circuit court did not make an explicit finding that Sanders was competent to stand trial for murder. *Id.* Therefore, the supreme court reversed and remanded the case for a new trial. *Id*.

¶12.    Hood is correct that *Sanders* interpreted Rule 9.06 to mandate a competency hearing in every case when the court orders that a mental evaluation be conducted. But we have held that *Sanders* is not to be applied retroactively. In *Brown v. State*, 198 So. 3d 325, 331 (¶20) (Miss. Ct. App. 2015), the appellant made the same argument as Hood—that his guilty plea and "conviction must be vacated due to the lack of a formal competency hearing" after undergoing a mental exam. In affirming, we held that "*Sanders* and the later cases that have relied on *Sanders* do not apply to Brown's 1999 guilty plea because they are not retroactive." *Id*. at (¶21) (footnote and emphasis omitted). Therefore, we find that *Sanders* does not have an effect on Hood's 2007 conviction.[4]

¶13.    Hood next argues that *Sanders* was not the first case that strictly interpreted Rule 9.06 to require a competency hearing. For support, Hood cites *Ficklin v. State*, 758 So. 2d 457

---

[4] In addition, in *Pitchford v. State*, 240 So. 3d 1061 (Miss. 2017), the Supreme Court modified *Sanders*'s holding. There, the Court held that an order requiring a competency evaluation does not "necessarily" or "conclusively" establish that a competence hearing is also required. *Id*. at 1068-69 (¶¶37-43).

6

(Miss. Ct. App. 2000), and *Magee v. State*, 914 So. 2d 729 (Miss. Ct. App. 2005).

¶14.    Hood cites *Ficklin* for the proposition that "[o]nce the issue of competency is raised, the trial judge is obligated to conduct a hearing in order to decide if a probability exists that the defendant is capable of making a rational decision." *Ficklin*, 758 So. 2d at 460 (¶9). Hood argues that because his competency was raised, he should have been afforded a competency hearing after his evaluation was conducted. But Hood's reliance on *Ficklin* is misplaced and not helpful to his argument because that case involved the denial of a motion for a psychiatric evaluation. *Id*. at 459 (¶7). Whereas here, the trial court granted the motion for an evaluation, and the evaluation did in fact take place.

¶15.    In *Ficklin*, the defendant was convicted of aggravated assault. *Id.* at (¶1). His attorney filed a motion for a psychiatric evaluation. *Id.* at (¶5). The initial hearing concerning the defendant's motion was held one day after his counsel was appointed. *Id.* at 460 (¶11). Ficklin's counsel presented an affidavit saying that the defendant was not cooperating and seemed confused about the crime he was charged with. *Id*. Additionally, Ficklin's counsel indicated that the defendant acted "irrationally" and "stayed in a complete rampage." *Id.* The trial court denied the motion and "determined that there was not sufficient proof presented at that time to warrant a psychiatric evaluation." *Id*. at 459 (¶6). In affirming the trial court, we stated that a hearing was held "to determine whether sufficient evidence existed to order a mental evaluation"; therefore, the correct legal standard was applied. *Id.* at 460 (¶13). Here, the court granted Hood's motion for a mental evaluation, and Hood was evaluated. Dr. Lott did in fact opine that Hood was competent to stand trial.

7

The evaluation report was also a part of the record for the court to consider when it ruled that Hood was competent to stand trial. Therefore, *Ficklin* is inapplicable to this case.

¶16. Further, Hood asserts that Rule 9.06 provides that the trial court must order a mental evaluation and conduct a hearing if the court has reasonable grounds to believe the defendant is incompetent, citing *Magee*, 914 So. 2d at 733 (¶9). In *Magee*, the court stated:

> According to Rule 9.06, the trial court must order a mental evaluation and conduct a competency hearing *if the court has a reasonable ground to believe the defendant is incompetent*. On review of a trial court's decision to forego a competency hearing, this Court inquires whether the trial court had a reasonable ground believe the defendant was incompetent. To determine whether the trial court had such reasonable ground, we apply the test enunciated in *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980): "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, nor rationally aid his attorney in his defense?" Some information that has been considered probative of a defendant's competency are the defendant's demeanor during the proceedings and defense counsel's statements to the court that the defendant is unable to rationally consult with counsel or assist in his own defense. *A mental evaluation finding the defendant competent to stand trial may support the trial court's decision to forego a competency hearing.*

*Id.* at 735 (¶15) (emphasis added) (citations omitted).

¶17. In this case, Hood was given a mental evaluation by Dr. Lott. Dr. Lott noted that Hood was alert, attentive, and responded promptly to questions. Dr. Lott found that Hood was precisely oriented. Hood's speech was appropriate, and his responses were at all times coherent and goal-oriented. There were no significant expressive and receptive language deficits noted. Dr. Lott determined that Hood had a full-scale IQ score of 89, which falls in the average range. Hood's reading score was reported to be in the low-borderline range at a 4.7 grade-level. When it came to Hood's knowledge of the court proceedings, Dr. Lott

8

noted that Hood understood what crime he was charged with and that he was charged as a habitual offender. Hood understood that the purpose of a trial was to find a person "guilty" or "not guilty," that the jury determined the verdict, and that a certain number of people on the jury needed to agree to reach a verdict. Hood understood the outcomes of verdicts and the characteristic and roles of witnesses. Hood also acknowledged that he understood the plea bargain and that he could not be compelled to testify. Therefore, Dr. Lott concluded that Hood did not appear to need further testing or psychiatric treatment.

¶18. The general docket sheet reflects that Dr. Lott's report was made a part of the record and that the court relied upon it when concluding that Hood was competent to stand trial. *See Magee*, 914 So. 2d at 736 (¶18) ("When . . . the trial court does not make express findings on its decision to forego a competency hearing, this Court 'must assume that the trial court objectively considered all the facts and circumstances, including those which are not available to this Court, which bore upon [the defendant's] competence to stand trial.'"). Therefore, as we did in *Magee*, here we must also "assume that the mental evaluation, considered in conjunction with the other facts and circumstances recited above, dispelled any reasonable doubt in the lower court's mind that [Hood] could be incompetent to stand trial." *Id.* On this record, Dr. Lott's report supports the trial court's decision to forgo a competency hearing because there was nothing found or presented that would have raised a doubt about Hood's competency. Hood failed to provide the trial court with information that would have reasonably raised a doubt about his competence and alerted the court of the possibility that he could neither understand the proceedings, nor rationally aid his attorney in his defense.

Therefore, this issue is without merit.

## CONCLUSION

¶19. *Sanders* does not apply retroactively, and the trial court was not required to conduct a competency hearing. Therefore, the trial court did not err when it denied Hood's PCR motion.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**